**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JONATHAN R.  ALEJANDRO** *et al.* | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 22-897** |
| | : | |
| **FREEDOM MORTGAGE** | : | |
| **CORPORATION,** *et al.* | : | |
| | : | |

---

**McHUGH, J.**                                                                          **August 30, 2022**

<u>**MEMORANDUM**</u>

       This is an action in which Plaintiffs, proceeding *pro se*, allege that Defendants engaged in unlawful activity including extending them a loan, transferring the servicing of the loan, failing to rescind the loan, harassing and defaming them, and damaging their credit.  I previously granted a Motion to Dismiss in this case without prejudice.  Plaintiffs return with an amended Complaint, adding the loan originator, Finance of America Mortgage LLC, as a Defendant and alleging: (1) civil fraud; (2) violation of the civil Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*.; (3) violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq*. and Regulation X, 12 CFR § 1024; (4) violation of TILA, 15 U.S.C. §§ 1601 *et seq*., and Regulation Z, 12 CFR § 1026; (5) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.; (6) slander of title; (7) unjust enrichment; (8) civil conspiracy; (9) breach of fiduciary duty; (10) breach of contract and breach of duty of good faith and fair dealing; and (11) seeking a declaratory judgment in an action for quiet title.  Defendants have filed renewed Motions to Dismiss.  As Plaintiffs did not remedy the deficiencies of their original claims and fail to state a claim as to their new claims, I will grant Defendants' Motions, this time dismissing Plaintiffs' Complaint with prejudice.

## I.    Factual Allegations:

The full factual background is set forth in my previous memorandum opinion.  In brief, on January 22, 2021, Plaintiff Olivia Alejandro, individually, and Plaintiffs Olivia Alejandro and Jonathan Alejandro, solely as trustees of the Alejandro Family Revocable Living Trust, obtained a loan with Finance of America Mortgage ("FAM")[1] which paid off/refinanced a prior mortgage loan against a property located at 151 West Airy Street, Norristown, PA 19401.  Am. Compl. ¶¶ 5-7.[2]  Plaintiffs then executed a note evidencing the loan and a mortgage securing the loan against the property at 151 West Airy Street.  Note and Mortgage, Mot. to Dismiss, Exs. A, B, ECF 27.[3]  On March 26, 2021, the servicing of the Loan transferred from FAM to Freedom Mortgage Corporation ("FMC").[4]  Am. Compl. ¶¶ 8, 26.

The thrust of Plaintiff's amended pleading seems be primarily an objection to FAM's transfer of the loan after origination.  Plaintiffs allege that this "transaction was never recorded in the county records."  Am. Comp. ¶ 8.   Plaintiffs cite FAM's statements in an S-4 Registration Statement filed with the Securities and Exchange Commission regarding FAM's securitization and sale of mortgage loans it originates.  *Id.* at ¶¶ 23-24.  Plaintiffs also complain regarding the lack of

---

[1] Plaintiffs' Amended Complaint refers to Finance of America Mortgage as "FOA," and Defendants use the abbreviation "FAM."  I use FAM herein.

[2] Plaintiffs' Amended Complaint lists the date as January 21, 2021, but mortgage is dated January 22, 2021, and Plaintiffs use January 22, 2021 as the operative date throughout the exhibits attached to the Amended Complaint.

[3] I may consider the Note and Mortgage attached to the Motion to Dismiss because they form the basis of Plaintiff's claims.  *See Pension Ben. Guar. Corp. v. White Consol. Inds., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.")

[4] The Amended Complaint refers to FMC as "the alleged 'servicer' of the loan" and FAM as "the alleged nominal lender and originator of the loan." Am. Compl. ¶¶ 5-6.  Plaintiffs allege that FAM "sold the 'mortgage'" to FMC "without providing proof of the transaction via receipt as Plaintiffs are parties to this transaction." *Id.* ¶ 8.

endorsements on a version of the Note that they reviewed and claim that FAM "never loaned" money to them at all, but rather used their names and credit as part of a criminal enterprise designed to hide the transfer of the Loan to the government, rather than to FMC. *Id.* at ¶¶ 23-28. Plaintiffs allege that both FAM and FMC engaged in a scheme to profit off the origination of the Loan through the securitization process. *Id*. at ¶¶ 29-31.

In addition, Plaintiffs repeat their allegations that, following an audit of their personal documents, they discovered that "they had never received a complete alleged loan package after closing with FOA, on January 21, 2021." Am. Compl. ¶ 7. They complain of not having received "a copy of the loan application with 2 wet ink blue signatures, recession [sic] documents along with all material documents associated." *Id.* Plaintiffs further allege that FMC ignored or failed to properly respond to their correspondence requesting various documents,[5] engaged in fraud, stated misrepresentations, and profited off their personal information. *Id*. ¶¶ 10-21, 25-33. Plaintiffs allege that, in December 2021, they requested documents through a Qualified Written Request (QWR) and that "FMC failed to provide such documents in violation of RESPA, TILA and U.S.C. Title 18, Part I, Chapter25, § 472, 473, 474, 474A, and 475 – and instead, only sent a copy of unauthenticated monthly billing statements in late February 2022 in an attempt to validate the debt." *Id.* ¶ 10.[6]

Finally, Plaintiffs persist in their meritless allegations, previously debunked in my earlier memorandum, that they have sent FMC various "affidavits of truth," which FMC has not

---

[5] Plaintiffs state that FMC received Plaintiff's recission paperwork on January 5, 2022, but failed to respond, discharging Plaintiff from liability for having to pay on the mortgage. Am. Compl. ¶ 12.

[6] Plaintiffs cite federal criminal statutes pertaining to counterfeit securities: 18 U.S.C. §§ 472-475. To the extent that Plaintiffs may be attempting to rely on these statutes as providing a cause of action, no private right of action exists. *See Linda R.S. v. Richard D*., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").)

responded to, thus "making everything stated in AOT truth in the court of law per (231 Pa. Code § 1035.4) by tacit agreement."  Am. Compl. ¶¶ 15-19.[7]

Plaintiffs bring federal claims against FMC and FAM for (1) violation of RICO; (2) violation of RESPA and Reg. X; (3) violation of TILA and Reg. Z; and (4) violation of the FCRA. In addition, Plaintiffs include claims against FMC and FAM for (5) slander of title; (6) civil fraud; (7) unjust enrichment; (8) civil conspiracy; (9) breach of fiduciary duty; (10) breach of contract and breach of duty of good faith and fair dealing; and (11) seeking a declaratory judgment in an action for quiet title.

## II.    Standard of Review

Within the Third Circuit, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009).

Plaintiffs are *pro se*.  There is a clear, well-established "obligation to liberally construe a *pro se* litigant's pleadings," *Higgs v. Att'y Gen*., 655 F.3d 333, 339 (3d Cir. 2011), and *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, "[p]*ro se* litigants still must allege sufficient facts in their complaints to support a claim."  *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 245 (3d Cir. 2013).

---

[7] As I noted before, the provision of the Pennsylvania Code which Plaintiffs cite describes the requirements for affidavits, but does not stand for the proposition that if the affidavit is not rebutted, everything averred must be taken as true.

In addition, Plaintiffs repeat their erroneous argument that because the Defendants did not respond or object to various mailings, "they agree to Plaintiff's demands and new terms stated in Conditional Acceptance." Am. Compl. ¶ 21.  As I stated previously: "This misunderstands the law of contracts, which provides that, 'to be a contract, the offer must be accepted.  An offeree has a right to make no reply to offers, and his silence and inaction cannot be construed as an assent to the offer.'"  Op. at 13, ECF 20 (quoting *In re Baum's Estate*, 117 A. 684, 685 (Pa. 1922)).

4

Plaintiffs have not responded to the Motions to Dismiss. The Court will nevertheless analyze the Amended Complaint to determine whether it states a claim. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir.1991) (holding that a district court granting an unopposed motion to dismiss in a *pro se* case must ordinarily engage in an analysis of the merits).

**III.    Discussion:**

Plaintiffs' federal claims arise under Racketeer Influenced and Corrupt Organizations Act ("RICO"), Truth in Lending Act ("TILA"), Real Estate Settlement Procedures Act ("RESPA"), and the Fair Credit Reporting Act ("FCRA"). As discussed below, each of these claims fails as pleaded or is time-barred. As the federal claims all fail, I decline to exercise supplemental jurisdiction over the state claims.

a.    <u>Plaintiffs' RICO claim fails</u>

Plaintiffs argue that Defendants' alleged conduct violated RICO, 18 U.S.C. § 1962(c), which "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir.2010) (citing 18 U.S.C. § 1962(c)). To state a claim arising under RICO, a plaintiff must plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, plus an injury to business or property." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 269 (3d Cir. 2009).

Plaintiffs' RICO claim fails for a multitude of reasons. First, Plaintiff cannot plausibly allege a "pattern of racketeering activity" where the facts alleged concerns only one allegedly fraudulent transaction. *See* 18 U.S.C.§ 1961 (5) ("'pattern of racketeering activity' requires at least two acts of racketeering activity" within ten-year period); *Banks v. Wolk*, 918 F.2d 418, 421

(3d Cir. 1990) ("No defendant can be liable under RICO unless he participated in two or more predicate offense sufficient to constitute a pattern."). "[T]o prove a pattern ... a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *United States v. Bergrin*, 650 F.3d 257, 267 (3d Cir. 2011) (citation omitted); *see Jung v. Bank of Am., N.A.*, No. 3:16-CV-00704, 2016 WL 5929273, at *10 (M.D. Pa. Aug. 2, 2016) (dismissing RICO claim where "allegedly fraudulent mortgage and foreclosure on which Plaintiff bases her RICO claim constitutes a single transaction directed at a single piece of property affecting only Plaintiff.")

Second, Plaintiffs have not adequately alleged the existence of a RICO enterprise. "RICO reaches 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Boyle v. U.S.*, 556 U.S. 938, 944 (2009) (citation omitted). Such an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. . . separate and apart from the pattern of activity in which it engages." *United States v. Turkette,* 452 U.S. 576, 583 (1981). "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 129 S.Ct. at 2244.

Here, Plaintiffs fail to identify any relationships among those associated or how any Defendant participated in the management, direction, or operation of the purported enterprise. *See Univ. of Maryland at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993). In the general section of their Amended Complaint, Plaintiffs vaguely allege that "Defendants formed a joint venture for their own profit much before Plaintiff Olivia even applied for the loan." ¶ 30. In the RICO Count, Plaintiffs state that "Defendants in a joint venture are

selling unregistered securities consisting of Plaintiffs [sic] mortgage," but do not describe any details of this venture. Am. Compl. ¶ 61. Moreover, Plaintiff does not allege any separate purpose, and in fact expressly alleges that the enterprise has only one purpose: "the aim and objective of the enterprise being to perpetrate a fraud upon the Plaintiff through the use of intentional nondisclosure, material misrepresentation, and creation of fraudulent loan documents." *Id.* ¶ 63. In the absence of a separate purpose, Plaintiffs' claim fails.

Finally, Plaintiff pleads wire fraud and mail fraud as the predicate crimes. *See* Am. Compl. ¶ 58 ("The Defendants scheme to defraud violates mail and wire fraud statutes 18 U.S.C. §§1341, 1343m"). When fraud is the predicate act, a plaintiff must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002). Specifically, Rule 9(b) states "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9b's standard may be satisfied by "pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud. Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (cleaned up).

Here, Plaintiffs have not alleged any of the elements of wire or mail fraud with the specificity needed to satisfy Rule 9b. They generally state that Defendants violated the wire and mail fraud statutes by "mailing copies of loan documents and making fraudulent statement as to who the owner of note and mortgage is or was by making false reference to the note and mortgage which they apparently have never been seen or produced." Am. Compl. ¶ 58. This lacks sufficient detail. Plaintiffs describe the securitization of mortgages and the market that exists to purchase

mortgages.   Plaintiffs have not, however, shown how the securitization of their mortgage represents a predicate RICO act.   Thus, the RICO claim fails.

Plaintiffs also bring a claim under 18 U.S.C. § 1962(d) for conspiracy to violate RICO. Here, because Plaintiffs do not properly allege a RICO claim, the conspiracy to commit RICO likewise fails.   *See In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 373 (3d Cir. 2010) ("A § 1962(d) claim must be dismissed if the complaint does not adequately allege an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense) (cleaned up).

### b.   Plaintiffs' TILA Claim Fails

Plaintiffs further allege that FMC and FAM violated TILA, 15 U.S.C. §§ 1601 *et seq*., by engaging in unlawful activity as part of the consumer credit transaction.   I previously noted multiple deficiencies in Plaintiffs' TILA claims and dismissed them without prejudice.  Plaintiffs' Amended Complaint does not address or remedy any of the failings noted in my prior opinion.

### i.   *Plaintiffs' Damages Claim is Time Barred*

Damages claims for TILA are subject to a one-year limitations period, which, when related to alleged disclosure failures occurring during loan origination, runs from the date of origination. *See* 15 U.S.C. § 1640(e); 12 C.F.R. § 1026.2(a)(13).   I previously dismissed Plaintiffs' TILA claims as time barred, noting that Plaintiff did not plead that equitable tolling should apply.   In the amended Complaint, Plaintiffs repeat their allegation that FMC and FAM violated TILA by failing to provide disclosures at the closing of the loan, which occurred on January 22, 2021.   *See* Am, Compl. ¶ 7; 12 C.F.R. § 1026.17(b) (stating that the "creditor shall make disclosures before consummation of the transaction.").   Specifically, Plaintiffs allege that FMC and FOA failed to disclose notice of right to rescind; failed to disclose billing rights statement; and failed to disclose aspects of the finance charge.   The suit here was filed over a year later.   In spite of having notice

that their claim would be untimely unless equitable tolling could apply, Plaintiffs have not alleged that equitable tolling applies in their Amended Complaint.  Therefore, their TILA damages claims will be dismissed with prejudice.

>            *ii.   Plaintiffs Fail to State a Claim for Recission*

Plaintiffs renew their recission claim.  Again, Plaintiff affirmatively pleads that they sent FMC recission paperwork, which was received on January 5, 2022, close to a year after the refinancing was consummated.  Am. Compl. ¶ 12.  Plaintiffs have alleged that they were not provided with two copies of the notice of the right to rescind, which would render a three-year filing period potentially applicable, rather than the three-day period that applies when the required disclosures are provided.  15 U.S.C. § 1635(f).  I previously held that the Defendants' submission of copies of Notices of Right to Cancel signed by Plaintiffs raised a "rebuttable presumption of delivery thereof," but granted Plaintiffs leave to amend in the event they could plead facts to rebut the presumption of delivery.  Op. at 9-10, ECF 20 (citing 15 U.S.C. § 1635(c)).  Plaintiffs have not not done so.

Plaintiffs have not alleged that the Notices of the Right to Cancel are inaccurate or alleged any facts to rebut the presumption of delivery.  Notices, Mot. to Dismiss, Ex. C, ECF 27-4.  Instead, Plaintiffs restate verbatim the argument I previously dismissed as erroneous: that "right to cancel is a misleading document that doesn't have the same meaning as right to rescind" with citation to Black's Law Dictionary's definitions of rescind and cancel.  Am. Compl. ¶ 70.  Because Plaintiffs' Amended Complaint does not plead facts to rebut the presumption of delivery, Plaintiffs have failed to state a valid claim for recission, and it will be dismissed, this time with prejudice.

>       c.   Plaintiffs' RESPA Claim Fails:

Plaintiffs assert several RESPA, 12 U.S.C. §§ 2601 *et seq*., claims against FAM and FMC. As a threshold matter, some of Plaintiffs' RESPA claims are time-barred.  Plaintiffs bring claims

under 12 U.S.C. § 2607(d)(2) for receipt of allegedly excessive amounts for "settlement services." A RESPA claim under Section 2607 is subject to a one-year limitations period, running from the date the loan closes.  *See* 12 U.S.C. § 2614.  The limitations period begins to run "from the date of the occurrence of the violation," *id.*, which "begins at the closing of the loan," *Cunningham v. M&T Bank Corp.*, 814 F.3d 156, 160 (3d Cir. 2016).[8]  The loan closed on January 22, 2021, but the initial complaint was not filed until over one year later, on March 8, 2022.  Plaintiffs have not pleaded that equitable tolling applies.

Even were Plaintiffs' claim not time barred, it independently fails.  To state a claim under RESPA's fee provisions, plaintiffs must allege that the complained of fee was paid "other than for services actually performed." 12 U.S.C. § 2607(b).  Here, Plaintiffs plead that "Defendants accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed," but provide no facts to support this conclusory, threadbare allegation. Am. Compl. ¶ 75.  This is clearly inadequate under RESPA.  *See, e.g., Hartman v. Deutsche Bank Nat. Tr. Co.*, No. CIV.A. 07-5407, 2008 WL 2996515, at *3 (E.D. Pa. Aug. 1, 2008) (dismissing RESPA claim where complaint contained only conclusory allegations).  For this reason, Plaintiffs' RESPA claim should be dismissed.

Plaintiffs' claim under 12 U.S.C. § 2606 for alleged failure to make required disclosures similarly fails because that provision lists certain credit transactions that are exempted from RESPA requirements and cannot form the basis for a cause of action.

---

[8] Plaintiffs also claim violations of 24 C.F.R. § 3500.14.  Am. Compl. ¶¶ 78-79.  Effective July 2014, the HUD regulations for RESPA, previously found at 24 C.F.R. Part 3500, were withdrawn pursuant to the Dodd–Frank Wall Street Reform and Consumer Protection Act.  79 Fed. Reg. 34224–01 (June 16, 2014). Responsibility for enforcing RESPA had transferred to the Consumer Financial Protection Bureau ("CFPB"), which implemented a regulation analogous to the HUD regulation cited by Plaintiffs, 12 C.F.R. § 1024.14.  Any claim under 12 C.F.R. § 1024.14 is time barred, however, as subsection (a) makes clear that "[a]ny violation of this section is a violation of section 8 of RESPA (12 U.S.C. § 2607). . . . ," and thus would carry the same one-year limitations period.

Plaintiffs also allege that, in violation of RESPA, Defendant FMC has failed to respond to Plaintiff's Qualified Written Request ("QWR").   Under 12 U.S.C. § 2605(e), a loan servicer is required to respond to a QWR "relating to the servicing" of a loan.   A three-year statute of limitations governs the claim, so Plaintiff's claim is not time barred.   12 U.S.C. § 2614.   To state a valid claim under RESPA's QWR provision, Plaintiffs must allege that they submitted a request that complies with 12 U.S.C. § 2605(e)(1)(B).   This section provides that a letter is a QWR if it is: "[A] …written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that- (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).   Those requests must be related to servicing, i.e., "[related to] receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts ... and making the payments of principal and interest and such other payments." *Id*. at § 2605(i)(3).

Plaintiffs attach a copy of the alleged QWR to their Amended Complaint.   Am. Compl., Ex. C.   However, while Plaintiffs now refer to the letter as a QWR, it is actually a "debt validation letter" sent to FMC under the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et seq. (the "FDCPA").   *Id*.   The letter is titled "Debt Validation Letter" and clearly states in the first sentence that it is a notice "sent pursuant to the Fair Debt Collection Practices Act" and states that it is a request for "**VALIDATION**."   *Id*.   (emphasis in original).   At no point in the letter do Plaintiffs invoke their rights under RESPA.   The inquiry seeks information about the validity of the loan and mortgage documents and does not relate to improper servicing.   Accordingly, this correspondence does not qualify as a QWR under RESPA.   *See e.g., Capozio v. JP Morgan Chase*

11

*Bank, NA,* No. CV 16-5235, 2017 WL 5157532, at *4 (E.D. Pa. Nov. 7, 2017) (dismissing RESPA claim where plaintiffs failed to show they actually made a "qualified written request" as the term is defined in the statute).

          d.  <u>Plaintiffs' FCRA Claim Fails:</u>

Plaintiffs also bring a FCRA, 15 U.S.C. §§ 1681 et seq., claim against FMC.  To bring a claim under 15 U.S.C. § 1681s–2(b), a plaintiff must establish three elements: (1) she notified the consumer reporting agency of the disputed information, (2) the consumer reporting agency notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information.  *See, e.g., SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 359 (3d Cir. 2011).  This subsection imposes certain duties on a furnisher "[a]fter receiving notice ... of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency." 15 U.S.C. § 1681s–2(b)(1).  Under this subsection, notice "must be given by a credit reporting agency, and cannot come directly from the consumer."  *SimmsParris*, 652 F.3d at 358.

Here, Plaintiffs attach a copy of the report filed "with the credit agencies asking for an investigation into this matter," Am. Compl. ¶ 81, Ex. P.  Exhibit P is a copy of a complaint filed with the Consumer Financial Protection Bureau ("CFPB").  But it does not mention any violations of the FCRA by FMC.  *Id*. at Ex. P.  Moreover, the CFPB is not a consumer reporting agency under the FCRA.  *See Harris v. Pennsylvania Higher Educ. Assistance Agency / Am. Educ. Servs.,* No. CV 16-693, 2016 WL 3473347, at *7 (E.D. Pa. June 24, 2016), *aff'd sub nom. Harris v. Pennsylvania Higher Educ. Assistance Agency/Am. Educ. Servs.,* 696 F. App'x 87 (3d Cir. 2017) (non-precedential) (determining the Consumer Financial Protection Bureau is not a credit reporting agency under the FCRA).

Even if the CFPB were a consumer reporting agency, Plaintiffs do not allege that the CFPB or any other consumer reporting agency notified FMC of their dispute or that FMC failed to investigate the allegedly inaccurate information.  *See generally* Am. Compl.   Accordingly, Plaintiffs' FCRA claim fails.

      e.   Dismissal is With Prejudice:

Having already provided Plaintiffs with an opportunity to amend and state their claims with sufficient clarity, I deem it appropriate to dismiss the complaints with prejudice, because it would be prejudicial to Defendants to have to continue to litigate these claims.  *See In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1434 (3d Cir. 1997) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility).

      f.   The Court Declines to Exercise Supplemental Jurisdiction Over Remaining State Law Claims:

Pursuant to 28 U.S.C. § 1367, a federal court may exercise supplemental jurisdiction over state law claims "that are so related to claims within [the court's] original jurisdiction that they form part of the same case or controversy."  However, when the district court has dismissed all claims over which it has original jurisdiction, it has authority to decline to exercise supplemental jurisdiction over related state law claims.  28 U.S.C. § 1367(c)(3).  While a court has discretion in making this determination, "[i]f it appears that the federal claim is subject to dismissal under [Rule 12(b)(6)] ... then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances." *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir. 1976).

Plaintiffs assert jurisdiction under 28 U.S.C. § 1331 and the United States Constitution. Am. Compl. ¶¶ 1-2.  Plaintiffs do not allege that diversity jurisdiction exists under 28 U.S.C. § 1332 and the Amended Complaint alleges that they are Pennsylvania citizens and that FAM's principal place of business is in Pennsylvania.  Am. Compl. ¶¶ 4-6.  Plaintiffs have not met their

burden of showing that complete diversity exists.  *See, e.g., McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) (party asserting diversity jurisdiction bears the burden of showing complete diversity exists).  Moreover, the litigation here is at an early stage.  *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988) (noting that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

In the absence of diversity jurisdiction, and all federal claims having been dismissed, I decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and the remaining state law claims will be remanded to state court.

       g.  Plaintiffs' Additional Motions:

As I find that Plaintiffs' Amended Complaint has failed to state a claim under which relief could be granted, Plaintiffs' Pre-Hearing Motion for Discovery, ECF 30, and Motion to Compel Arbitration, ECF 34, will be denied as moot.[9]

**IV.**    **Conclusion**

For the reasons stated above, Defendants' Motions to Dismiss are granted.

                    ___/s/ Gerald Austin McHugh_____
                    United States District Judge

---

[9] I note that the Motion for Discovery was prematurely filed, as there was a pending motion to dismiss, and the Motion also ignored Fed. R. Civ. P. 34 (setting forth rules for serving discovery), Local Rule 26.1 (requiring certification of counsel that the parties, after reasonable effort, are unable to resolve the dispute), and this Court's guidelines for conducting discovery (stating that discovery should be delayed where a motion could result in complete dismissal of a case).  The Motion to Compel Arbitration is similarly meritless, where Plaintiffs produced no valid agreement to arbitrate, had affirmatively filed suit in this Court, and are seeking millions of dollars in damages.